# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

MARK A. GUZMAN, Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security, Defendant.

No. CV 13-03854-VBK

MEMORANDUM OPINION AND ORDER

(Social Security Case)

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") improperly

rejected the opinions of Plaintiff's treating doctors;

2. Whether the ALJ's findings on Plaintiff's residual functional capacity and his ability to perform his past relevant work at Step Four and other work at Step Five are supported by substantial evidence and free from legal error;

3. Whether the ALJ improperly assessed the third party testimony and written statements; and

4. Whether the ALJ improperly discredited Plaintiff's testimony.

(JS at 3-4.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded.

**I**

**THE ALJ DID NOT PROPERLY REJECT THE OPINIONS OF PLAINTIFF'S TREATING DOCTOR**

There is no dispute between the parties that Plaintiff has schizophrenia. This was one of the severe impairments assessed by the ALJ at Step Two. (AR 20.) Rather, the issue concerns the functional effects of that schizophrenia for purposes of determining whether Plaintiff is under a disability.

Between May 5, 2010 and August 29, 2012, Plaintiff's treating psychiatrist was Dr. Schave. (AR 318-320, 325-343, 376-396.) Dr. Schave consistently diagnosed Plaintiff with "undifferentiated schizophrenia" and, significantly, completed two Medical Source

Statements regarding Plaintiff's mental functional limitations. The first one was completed on August 25, 2011, and in that document, Dr. Schave assessed Plaintiff as "extremely impaired" in all functional categories, indicating that he is not able to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. (AR 370.)

Dr. Schave also completed a Medical Source Statement - Mental Impairment in August 2012, which assessed that Plaintiff has "no useful ability to function" in six areas of mental functioning.

At the administrative hearing before the ALJ, testimony was taken from a vocational expert ("VE") who, in response to a hypothetical question incorporating Dr. Schave's 2012 opinion, ruled out Plaintiff's ability to do any work. (AR 52-53.)

The ALJ discussed Plaintiff's treatment by Dr. Schave, and the aforementioned 2011 and 2012 assessments. (AR 22-23.) The ALJ noted that from January 29, 2010 to October 12, 2011, Plaintiff was tested for use of illicit drugs while in a court-ordered treatment program. (AR 23.) Indeed, a memorandum directed to "Social Security" dated September 18, 2012 indicates that Plaintiff was tested for illicit drugs in that program and completed it successfully. (AR 442.)

In his Decision, however, the ALJ noted a March 2012 report of De. Schave which indicated that Plaintiff had resumed the use of methamphetamine, and quoted Dr. Schave's statement that, "[Plaintiff] was given his meds, but told that if he continued to use Meth that I will no longer be able to tell if his mental state is due to the Meth drugs or to a Schizophrenia." (AR 23, 385.)

The ALJ also referenced an August 2012 report of Dr. Schave which he interpreted as indicating that antipsychotic medication had reduced

Plaintiff's audiovisual hallucinations. (AR 23, 372.)

The ALJ concluded that Dr. Schave's opinion "is undermined by his progress notes ... reflecting the ongoing overlay of questionable methamphetamine abuse as well as failure to comply with medical regimen by failing to take prescribed medication. Therefore, little weight is given to the opinion of Dr. Schave." (AR 24.) It is that depreciation of Dr. Schave's opinion, and the basis articulated therein, that forms Plaintiff's first issue. For the following reasons, the Court agrees with Plaintiff that the stated reasons are insufficient to substantiate the depreciation of Dr. Schave's opinion.

As a more detailed analysis of the progress notes reveals, the ALJ blurred the chronological record of drug abuse, much as the Commissioner does in this litigation by asserting that the ALJ "reasonably rejected Dr. Schave's opinions because his treatment notes reflected ongoing drug abuse." (JS at 15.) In fact, that is not the case. It is, rather, very clear that Dr. Schave was well aware of Plaintiff's drug use, his relapse into drug use, and most importantly, differentiated his diagnosis of schizophrenia from the effects of illicit drug use.

Perhaps the most salient document to illustrate the independent existence of Plaintiff's undifferentiated schizophrenia is Dr. Schave's August 25, 2011 assessment of extreme impairment in all functional areas. (AR 370.) This assessment came close to the end of a lengthy period of time during which Plaintiff was not using illicit drugs (e.g., January 29, 2010 to October 12, 2011). (See AR 442.) It is also relevant to the Court's analysis that Dr. Joseph Lockhart, a psychologist attached to the drug treatment program, rendered an opinion at about the same time, September 6, 2011, which assessed both

moderate and marked impairments in all mental functional areas. The ALJ's Decision makes only brief mention of Dr. Lockhart's analysis (AR 23), but then basically ignores it. The Commissioner attempts to support this with several arguments. First, he states that Dr. Lockhart's opinion was more consistent with the ALJ's residual functional capacity ("RFC") limitation to simple, repetitive tasks in a non-public setting. (JS at 22, citing AR 21.) The Court gives no weight to that argument as it is simply conclusory. The Commissioner argues that there are no treatment notes in the record from Dr. Lockhart, thus calling into question whether Dr. Lockhart was in fact a treating or even examining physician. Dr. Lockhart is identified as a forensic psychiatrist in the drug court program, according to a brief filed by Plaintiff's counsel before the Appeals Council. (JS at 22, AR 231.) But this begs the question. First, the ALJ did not articulate lack of treatment records or even Dr. Lockhart's status as a treating or examining physician in the Decision. To go outside that Decision to find post-hoc reasons for rejection of Dr. Lockhart's opinion is impermissible. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). In any event, because of the importance of this issue, the ALJ should have developed the record by either contacting Dr. Lockhart, or determining whether Dr. Lockhart had any relationship as a treating or examining physician with Plaintiff. The Court notes that the ALJ questioned Plaintiff at the hearing, but failed to elicit this information.

Looking even more closely at Dr. Schave's progress reports, the Court notes that Dr. Schave initially evaluated Plaintiff on May 5, 2010, at which time Plaintiff was not using illicit drugs. By June 25, 2010, Dr. Schave diagnosed Plaintiff with undifferentiated

schizophrenia. (AR 338-340.)

As the progress notes show, in a chronological fashion, Dr. Schave assessed serious functional limitations while Plaintiff was not using illicit drugs. In August 2010, Dr. Schave noted that, "He still seems as if 'he is not there.'" Plaintiff gave contradictory answers as to whether or not he was still hearing voices, and Dr. Schave gave a guarded long-term prognosis. (AR 336-337.)

While there is a notation in March 2011 that Plaintiff reported a significant decrease in voices that he heard and their control over his life (AR 331), by May 2011, there was an increase in the voices, and Dr. Schave prescribed a new drug for treatment of his schizophrenia. (AR 328-329.) By July 2011, Plaintiff showed some improvement with the new drug (AR 325-327), and in September 2011, Plaintiff indicated that the voices had decreased. (AR 394.) Despite that, Dr. Schave asserted that Plaintiff was not functioning well, and that "he has a psychotic process that makes it very difficult for him to stay in a situation and complete a task. He has difficulties trying to stay focused on a subject and he cannot concentrate well." (AR 395.) Indeed, in November 2011, Dr. Schave indicated that Plaintiff continues to be severely damaged by his schizophrenia and although he was not hearing voices telling him that he should kill himself, he was struggling. (AR 391.)

It was in or about January 2012 that Plaintiff moved to Northern California and temporarily regressed and began again using illicit drugs. Plaintiff returned to see Dr. Schave in March 2012, and it was at this time that Dr. Schave made the statement that if Plaintiff continued to use methamphetamine, Dr. Schave would not be able to tell if his mental state was due to drugs or schizophrenia. (AR 387.) Thus,

the only "overlay" between methamphetamine abuse and symptoms of schizophrenia which appears in the progress notes is in March 2012.

Although Plaintiff later showed some improvement, by August 2012, when he was again ceasing his use of illicit drugs, Plaintiff reported that he was hearing voices, although he was in remission from drug use. (AR 377.)

In sum, it is undeniable that there is a relationship between the exacerbation of Plaintiff's schizophrenia and the times he is using illicit drugs, or when he is not rigorously following his medication regimen. But, as the Court has noted, Plaintiff's primary treating source, Dr. Schave, was well aware of Plaintiff's drug use, and also aware when Plaintiff was not using drugs, and his assessments specifically reflect that he rendered a mental functional analysis separate from any effect of illicit drugs. (See, e.g., notation at AR 374.)

Certainly, there are contrary opinions from examining physicians such as Dr. Aleshire. (AR 22, 262.) In addition, the ALJ relied upon a State Agency non-examining physician, Dr. Haroun, who opined that Plaintiff's diagnosis of psychosis was most likely substance induced. (AR 22, 264-277.) But the issue is not whether there is a dispute based on independent clinical findings between treating and examining physicians. That circumstance is well accounted for in the law, and it is the ALJ's obligation to provide "specific and legitimate" reasons to depreciate the treating physician's opinion in such a case. See Hill v. Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012); 20 C.F.R. § 419.927(c)(2). The Court concludes that the reasons provided in the ALJ's Decision are not specific and legitimate, but are overly general, and more importantly, do not accurately reflect the evidence

in the record, particularly with regard to the analysis of Dr. Schave's progress notes. Thus, the Court agrees with Plaintiff that the ALJ did not properly reject the opinion of his treating doctor, Dr. Schave, and also the opinion of psychologist Dr. Lockhart.

Plaintiff's second issue, which is whether the ALJ's findings on Plaintiff mental RFC and his ability to perform his past relevant work at Step Four, and other work at Step Five, are supported by substantial evidence, is extensively briefed (JS at 26-50), but does not require extensive discussion from the Court. Indeed, the resolution of the second issue is controlled by the first. The Court has determined that the ALJ did not properly reject or depreciate the opinions of Drs. Schave and Lockhart. These opinions, and the mental functional capacity assessments which accompanied them, were not incorporated into any hypothetical question posed at the hearing to the VE, who (as the Court has noted) testified that if they had been incorporated, Plaintiff would be disabled. Consequently, Plaintiff's mental RFC can only be assessed on remand after a de novo hearing, and a determination of what, if any, weight is to be given to the opinions of Drs. Schave and Lockhart. Clearly, this will also be relevant to determining whether Plaintiff has the ability to perform his past relevant work at Step Four, or other work at Step Five.

**II**

**THE ALJ IMPROPERLY ASSESSED THIRD PARTY TESTIMONY AND WRITTEN STATEMENTS**

At the hearing, extensive testimony was taken from Plaintiff's step-father, Peter Najarro. Plaintiff lives with his step-father. (AR 42-51.) Plaintiff's mother, Cristina Najarro, provided three written

statements. (AR 171-178), 187-194, 211-218.) While the ALJ provided an extremely brief summary of these statements and the testimony (AR 23-24), there is virtually no evaluation of them provided in the Decision. This is clear and fundamental error. The Ninth Circuit has repeatedly indicated that relevant evidence provided by a claimant and by third party witnesses may not be ignored, but must be properly evaluated. See Smolen v. Chater, 80 F.3d 1273, 1288-1289 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009). See also SSR 06-03p.

But the issue here is not simply the ALJ's failure to comply with clearly articulated law and regulations. Rather, what the Court perceives here is that the ALJ, and now the Commissioner in this litigation, are both content with conflating the effects of drug use and the effects of severe and prolonged mental illness. Certainly, the testimony of Plaintiff's step-father, Mr. Najarro, is very illustrative. Mr. Najarro did not sugarcoat anything. Indeed, Mr. Najarro's testimony indicated a great deal of frustration with Plaintiff's behavior (he had lived in the household with Plaintiff since Plaintiff was nine years old), including removing him from the house to live with relatives, and also ejecting him from the house and getting a restraining order. (AR 45.)

The statements of Plaintiff's mother are equally compelling. All of this evidence can be very valuable in documenting a lack of impulse control, an inability to understand simple things, repeated episodes of auditory hallucinations, an inability to remember to take medications, bathe, and do simple household chores such as washing his plate. Of equal importance is the fact that these lay witnesses specifically established that Plaintiff's symptoms did not

substantially abate when he was free from use of illicit drugs. If this is not critical testimony, then the Court is at a loss as to what could be important in a case such as this. Instead, the Commissioner interprets what may very well be manifestations of serious mental illness in a pejorative fashion. The Commissioner argues that the statements of Plaintiff's step-father - that Plaintiff lied frequently - support the ALJ's findings. Indeed, the Commissioner asserts that the ALJ was correct in concluding that when Plaintiff used drugs, this "caused" his psychotic symptoms. (JS at 57.) From the Court's perspective, this type of analysis reflects either a lack of sophistication or an inability to accept the possible ramifications of serious mental illness. On remand, the Court fully expects that what it perceives thus far to be an unwillingness to objectively evaluate serious mental illness will not enter into the evaluation of Plaintiff's disability claim.

The Court need not devote substantial time to the fourth issue, which concerns the ALJ's devaluation of Plaintiff's own testimony and credibility. The analysis is exactly the same as it is with regard to the third issue. On remand, Plaintiff's credibility will be evaluated de novo.

In addition to remand for a new hearing, this Court strongly recommends that updated psychiatric evidence be obtained.

In the Court's view, this Decision is not just incorrect, but is seriously flawed because it reflects either an apparent lack of understanding of the ramifications of serious mental illness, or an unwillingness to provide an objective evaluation.

//

//

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: March 12, 2014

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE